[No. 19143. *En Banc.* November 18, 1925.]

## THE STATE OF WASHINGTON, *Respondent,* v. AL AUSTIN, *Appellant.*[1]

INDICTMENT AND INFORMATION (16)—REQUISITES — PRELIMINARY PROCEEDINGS—PRESENCE OF PROSECUTOR. The presence in the grand jury room, of a second deputy prosecuting attorney, who did nothing but take stenographic notes of the testimony, is not ground for quashing the indictment.

CRIMINAL LAW (216)—TRIAL—MISCONDUCT OF JUDGE—COMMENT ON EVIDENCE. It is not an unlawful comment on the evidence, in the prosecution of a jointist, to instruct the jury that the keeping of the place for the purpose of making sales made it a joint, "no matter how high or how bad the character of the people visiting the place," where there was evidence that it was frequented by people of good character.

SAME (329)—INSTRUCTIONS—AFTER SUBMISSION OF CASE. Upon a jury's request for further instructions making reference to the disagreement of a jury in the previous trial, it is not error to instruct the jury that that was none of their business and should not be considered.

SAME (329). Upon a jury's request for further instructions asking why other witnesses were not produced, it is not error, in instructing the jury to try the case on the testimony introduced, to state that a juror who will not do so, or follow the instructions, is not fit to be a juror.

[1]Reported in 240 Pac. 676.

SAME (329)—COERCING VERDICT. It is not objectionable as coercive of the jury, to instruct the jury that it is very desirable that they reach a verdict and that the jury room is no place for pride of opinion, where the context and other instructions did not indicate in any manner what the court thought of the case.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 23, 1924, upon a trial and conviction of being a jointist. Affirmed.

*Tucker, Hyland & Elvidge, John F. Dore,* and *F. C. Reagan,* for appellant.

*Ewing D. Colvin* and *Robert S. Macfarlane,* for respondent.

ASKREN, J.—This appeal is from conviction and sentence on the charge of being a jointist.

The first contention relied upon for reversal is that the court erred in not quashing the indictment upon the ground that one Royse was present during the grand jury proceedings, and that he there took stenographic notes of the proceedings. The record shows that Royse was a regularly appointed deputy prosecuting attorney for King county, and that he and another deputy were assigned to the grand jury. Sections 2032 and 4136, Rem. Comp. Stat., provide that the prosecuting attorney shall attend upon the proceedings of the grand jury. Section 115, Rem. Comp. Stat., provides that a deputy prosecuting attorney shall have the same power as his principal. Appellant contends that Royse took no active part in the questioning of witnesses, and that his services in the grand jury room, at least until after the witnesses had been examined in the present matter, were confined to the taking of stenographic notes; and it is argued therefrom that he did not exercise the functions of a prosecutor. But we think this fact is immaterial. If two deputy prosecutors are assigned to the work, it can make no difference whether both

examine witnesses and advise the jury, or whether one does. The situation cannot be different from many court trials where one counsel takes no active part but is present for purposes of advice and consultation.

The court gave the following instruction:

"The fact, if it be a fact, that the defendant kept liquor on the premises, would not of itself be sufficient to make him a 'jointist.' He must have maintained the place for the purpose of selling liquor therein.

"Neither would the fact, if it be a fact, that guests took their own liquor to 'The Grove' and there drank it, be sufficient to convict the defendant of being a 'jointist.' Keeping liquor on one's premises, or allowing guests to drink their own liquor on his premises, while it may be a violation of law, yet such is not the charge in this case. To make the defendant guilty in this case you must be satisfied beyond a reasonable doubt that he maintained it for the purpose, among other purposes, of selling intoxicating liquor thereon.

"In short, if the defendant maintained 'The Grove' not for the purpose alone of serving meals, but for the additional purpose of selling intoxicating liquors to guests, then he is guilty whether he made any sales or not, but if he did not maintain it for the purpose of selling intoxicating liquors, then the fact that guests carried there and drank their own liquor, or the fact that he kept his own liquor there without any purpose of selling the same, would not make him guilty.

"No matter how high or good the character of people visiting a place, if such place is maintained for the purpose, among others, of selling intoxicating liquor, then such place is a 'joint' and the person maintaining it is a 'jointist;' and no matter how bad the character or conduct of the people visiting a place, if such place is not kept for the sale of intoxicating liquor, then such place cannot be called a 'joint,' and the person keeping it is not a 'jointist.' "

It is urged that this instruction is reversible error, for the reason that, while the instruction correctly states the law, the last paragraph had no place in the

instruction because there was no evidence that the character of the people who visited the place in question was "high or good or low." The evidence seems to establish the contrary. Several of defendant's witnesses testified to their presence at the place in question, and that they saw nothing in the way of drunkenness or vulgarity, one witness saying that he had been there on one occasion with his two minor daughters, and the substance of their testimony being to the effect that the place was of excellent character. The appellant himself testified that on the night of the raid there were approximately one hundred fifty persons present, the down-stairs being full, and most of the upstairs, and that "everybody was very nice, behaved themselves very gentlemanly and ladylike; very nice people." Some of appellant's witnesses were men of standing in the community. Under this state of facts, we think it cannot be said that the court commented on the evidence by instructing the jury as it did.

After the jury had deliberated for some time, the bailiff was handed a paper containing a request for further instructions. Thereafter the court, in the presence of appellant, and counsel for the respective parties, called the jury in and gave certain instructions in response to the jury's request. One of these was:

"Your next statement is, 'A juror has mentioned the disagreement of the jury in the previous trial of the case.'

"With the greatest respect, that is none of your business. You are trying the case upon the evidence introduced at this trial, and you have no right to consider the fact of a disagreement of a previous jury."

It is contended that the words "with the greatest respect, that is none of your business," was improper and that the court should not have given this instruction. But we think the statement not improper. The

court would have the right to instruct the jury at the close of the evidence that the result of a previous trial thereof should in no manner influence their verdict, and should not be taken into consideration. If it failed to do so, and its attention were thereafter called to this fact by the jury, as it was in this written communication, the court would be remiss in its duty if it failed to advise the jury that the fact should under no circumstances be taken into consideration. If the court failed after the question had been asked, it would no doubt have been considered by the jury that the court by its silence approved their consideration of this fact.

Another instruction complained of was:

"Your next statement is that: 'A juror has asked why other witnesses who were mentioned were not produced, and indicated in other ways that deliberations were not confined to the testimony, the evidence and the instructions of the court.

"You must try this case on the evidence produced at this trial and as it came from the mouths of the witnesses examined on this trial.

"As to why parties mentioned by other witnesses were not produced, is a matter in the discretion of the respective counsel. You cannot consider any evidence which has not been produced here, and as to the statement that your deliberations are not to be confined to the testimony and the instructions of the court, it is difficult for this court to credit the same. Any juror who will consider testimony from any source other than that produced on the trial, or will fail to consider the instructions of the court, is not fit to be a juror. The testimony that has been given is to be considered for what you think it is worth, and you cannot consider anything else, and you must not fail to give consideration to each and every instruction."

Appellant contends that the statement "A juror who will consider testimony from any source other than that produced on the trial, or will fail to consider the

instructions of the court, is not fit to be a juror'' was improper in that it was coercive of the jury, and indicated the court's opinion upon the matter. It cannot be gainsaid that the instruction correctly states the fact. If the jury's deliberations were not confined to the testimony, the evidence and the instructions of the court, the court's bounden duty was to advise them that a juror was not fit to be a juror who considered testimony from any other source. The court, of course, could not know what outside information or what other things were being taken into consideration by the juror; whether such facts were being urged to convict appellant, or whether they were being urged to acquit him. In either event they had no place in the jury's deliberations.

The court's final instruction was:

''It is very desirable that you reach a verdict in this case. The law requires that your conclusion shall be unanimous. It is not required that any one of you should surrender his or her individual freedom of judgment, but it is well that each of you should have in mind that your true verdict cannot ordinarily be reached except by mutual consideration and discussion of all the different views that may suggest themselves to any of your number. The jury room is no place for pride of opinion. A verdict which is the result of real harmony, or that growing out of open-minded discussion between jurors and a willingness to be convinced, with a proper regard for the opinions of others and with a reasonable distrust of individual views not shared by their fellows, is a fair yielding of one reason to a stronger one; such, having in mind the great desirability of unanimity, is not open to criticism. The law contemplates that jurors shall, by their discussions, harmonize their views if possible, but not that they shall compromise with their consciences and yield for the mere purpose of agreement.''

Appellant finds particular fault with the words in this instruction, ''It is very desirable that you reach a

verdict in this case," and, "The jury room is no place for pride of opinion."

Appellant insists that these words also were coercive of the jury, and that, taken together with the previous instructions to which they have excepted, they amounted to an expression by the court indicating its belief that the defendant was guilty, and that its practical effect amounted to an actual participation by the court in the argument of the case. The two sentences in the instruction complained of could in no wise be construed as coercing the jury into a verdict unless the context in some manner indicated what the court thought of the case. We think it clearly appears that the state could as strenuously have argued that this was in favor of a verdict of not guilty as that of guilty. It follows that the instruction was favorable to neither, and intimated in no manner the belief of the court as to what the verdict should be, nor as to what the evidence showed.

In construing statements of the trial court, each of them must be given its proper setting. They should not be detached from the context and then permit speculation to suggest the possible effect upon the minds of the jurors. Taking the instructions as a whole and assigning to each its proper position in the trial of the case, we think it cannot fairly be said that any of the statements contained in these instructions could have the effect upon the jury that appellant contends for. Appellant does not urge that in any of these additional or supplemental instructions the court failed to properly construe the law.

Much reliance is placed by appellant upon *State v. Crotts,* 22 Wash. 245, 60 Pac. 403, and *State v. Thield,* 36 Wash. 365, 78 Pac. 919. In the *Crotts* case, we held that the trial court had asked leading questions which suggested its opinion that the issue of self-defense

pleaded by defendant on a charge of first degree murder was not borne out by the facts. In the *Thield* case, we held that the remarks of the trial court could mean but one thing to the jury, and that was defendant's guilt. We think the words in the present case do neither. It is true, the court told the jury it was very desirable that they should reach a verdict in this case, but such a statement could not indicate what the verdict should be. The remark that "the jury room is no place for pride of opinion" does not require extended discussion. The court desired the jury to reason together, and to preface its remarks that they should reason together with such a statement surely cannot be held to be objectionable.

We think that the situation presented is very similar to that presented in *Montgomery v. State,* 199 Pac. (Okl. Cr.) 222, where the jury, upon being called into court, notified the court that they stood eleven to one. The trial court in that case remarked as follows:

"I expect that one man thinks there are eleven mighty contrary jurors. Gentlemen, it is important in these cases that you reason together and consider together and not get stubborn or arbitrary or unreasonable; reason among yourselves and see if you can not arrive at a verdict. It is important to the state and to defendant that you arrive at a verdict, if it is reasonably possible, and I suggest that you return to your jury room and resume your deliberations and reason with one another and see if you cannot get together. You may retire."

The appellate court, in refusing to hold this remark reversible error, said:

"It is contended that by the use of the expression 'I expect that one man thinks there are eleven mighty contrary jurors,' the court intended and did convey just the opposite meaning—that the eleven thought there was one mighty stubborn man in that jury, and

that this remark of the court indicated to the jury that the court also thought that there was one mighty stubborn man on the jury.

"We do not approve of this remark. It hardly comports with the dignity of a court of general jurisdiction. For that reason, trial courts should forbear indulgence in such remarks.

"However, it takes a considerable quantity of refined and circuitous reasoning to convince one that the remark complained of amounted to an attempt on the part of the trial court to coerce the jury into returning a verdict, or that it had any such effect. The entire discourse by the court to the jury discloses that it was the trial court's purpose only to call the jury's attention to the importance of arriving at a verdict in the case, whatever that verdict might be, and that they should reason together and consider the evidence as reasonable men, and not in a stubborn, arbitrary or unreasonable manner. We think it was entirely proper for the court to so advise the jury, and that the action of the court was not such as would tend to coerce the jury in arriving at a verdict nor tend to influence the verdict to be returned. Therefore we find no reversible error in this assignment."

We agree with the court in that case that trial courts should be careful in their remarks to juries, yet, it must be remembered that, because of the exigencies of the trial of cases, they cannot always choose the words employed with such fine discrimination that they may not thereafter be subject to possible misconstruction.

A careful reading of the record discloses that the cause was fairly tried, and that the court at all times during the trial maintained as it should a very impartial attitude. We cannot think that the remarks made in any of the additional instructions were such as to cause the jury to believe that the court had discarded the robes of impartiality and assumed the role of state's advocate.

Finding no reversible error in the record, the judgment is affirmed.

TOLMAN, C. J., FULLERTON, PARKER, MACKINTOSH, MAIN, and MITCHELL, JJ., concur.