[No. 33366. Department Two. September 27, 1956.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND WILLIAMS, *Appellant.*[1]

---

[1]Reported in 301 P. (2d) 769.

*Charles M. Stokes,* for appellant.

*Charles O. Carroll, F. A. Walterskirchen,* and *Leonard W. Schroeter,* for respondent.

WEAVER, J.—Defendant was charged by information in three counts. The first was assault with intent to rape a certain named female. Count II charged assault with intent to rape a second female. The third count was robbery "at the time and place referred to in count II and connected therewith." It is charged that all acts were committed on the same day. Defendant appeals from judgment and sentence, entered upon a jury verdict of guilty, to all three counts of the information.

Seventeen errors are assigned on appeal. They divide into three categories: (1) that the court erred when it denied defendant's motion for separate trials on counts I and III; (2) that the court erred when it admitted in evidence (a) two written statements signed by defendant and (b) a tape recording; and (3) that the court erred (a) in giving eight instructions and (b) in refusing to give three requested instructions, to which exceptions were taken.

■ As to alleged misjoinder of counts in the information, we cannot distinguish the instant case from *State v. Winters*, 39 Wn. (2d) 545, 236 P. (2d) 1038 (1951). Therein, count I charged defendant with rape; count II was for robbery, which charged the crime was committed in connection with the rape charged in count I; count III charged the crime of rape. (Other counts were involved which we need not notice.) It does not appear that the charge of robbery in count II was connected with or arose out of the same act or transaction as the charge of rape in count III. We held that this did not constitute a misjoinder. This is the precise factual situation of the instant case. Hence, it was not error for the trial court to deny defendant's motion for separate trials on counts I and III.

■ Except to state that he had not abandoned his contention that the written statements evidenced by state's exhibits Nos. 22 and 25 (purported written confessions) were improperly admitted in evidence, we find no argument in defendant's brief in support of this assignment of error. Therefore, we cannot consider it. *Deer Park Pine Industry v. Stevens County*, 46 Wn. (2d) 852, 860, 286 P. (2d) 98

(1955); *Winslow v. Mell*, 48 Wn. (2d) 581, 583, 295 P. (2d) 319 (1956), and cases cited.

Although there are not many reported cases dealing with the introduction into evidence of sound recordings, those jurisdictions which have considered the question are agreed that such evidence is admissible if proper foundation has been laid to assure the authenticity of the recording. Annotation: Sound recordings as evidence. 168 A. L. R. 927 (1947).

This court has considered the admissibility in evidence of tape or wire recordings on at least three different occasions. *In State v. Salle*, 34 Wn. (2d) 183, 193, 208 P. (2d) 872 (1949), the court held that

" . . . the mere fact that some portion of it [wire recording] may have been inaudible would not render the entire recording inadmissible."

In *State v. Slater*, 36 Wn. (2d) 357, 363, 218 P. (2d) 329 (1950), a wire recording was received in evidence. The court said:

"There is no merit in the contention that there was no proper identification of the voices. The contentions that admission of the wire recording violated the appellant's guarantee against self-incrimination and that the recording constituted an unlawful search and seizure, have frequently been disposed of. [Citing cases.]"

The court affirmed the holding of the *Salle* case, *supra*.

In *State v. Lyskoski*, 47 Wn. (2d) 102, 287 P. (2d) 114 (1955), appellant objected to the introduction of tape recordings on the grounds (1) that the conversations were partially unintelligible, and (2) that they were not properly identified. The *Salle* and *Slater* cases, *supra*, answered appellant's first contention. Of his second contention, the court said:

"They [tape recordings] were traced from the time of making the original recording until they were admitted in evidence, and Edwards testified, after the recording had been played for the jury, that the voices were those of appellant and himself."

None of our former decisions have attempted to state a rule by which the admissibility in evidence of a wire or tape recording can be tested.

The assignment of error directed to the admission in evidence of state's exhibit No. 26, a tape recording, springs from the following:

"Q Now, while you were taking this statement [a written statement purportedly signed by defendant], did you have any apparatus that was recording?

"A Yes, sir, I had a tape recorder in operation.

"Q You had a tape recorder in operation?

"A Yes, sir.

"Q Did this defendant know that it was in operation?

"A No, sir, not to my knowledge.

"Q Did you prepare the tape recorder mechanism so that it would function properly?

"A I did.

"Q Did you take a tape recording of the conversation?

"A Yes, sir.

"Q Is that the same conversation from which this statement was taken?

"A Yes, sir.

"Q And on what date was that?

"A On January 19, 1955.

"Q I will show you what has been marked State's Exhibit 26 for Identification and ask you to tell the Court and jury what that is, if you know.

"A That is the tape recording we have just been discussing.

"Q The conversation with the defendant?

"A Yes, sir.

"Q When was it taken?

"A January 19th, 1955.

"MR. BIANCHI: I will offer State's Exhibit 26.

"MR. STOKES: Well, obviously there has been no proper foundation laid for its admission, no testimony as to who made it, where they were, how it was connected, or whether it was connected properly, if the mechanism was working, or any other thing, absolutely nothing."

"MR. BIANCHI: Do you want to question on voir dire, Counsel?

"THE COURT: He testified that it was taken under his direction, as I understood it.

"The Witness: I started the machine in operation and stopped it, your Honor.

"The Court: Overruled. Exception allowed. Admitted. "(State's Exhibit No. 26 for Identification received in evidence.)"

■ There can be no quarrel with the rule that a proper foundation must be laid before a tape or wire recording can be admitted in evidence. See *State v. Perkins*, 355 Mo. 851, 198 S.W. (2d) 704, 168 A. L. R. 920 (1946). The problem is to apply sufficient safeguards to assure true reproduction without creating an excessive burden of preliminary proof to establish admissibility. Too stringent requirements could effectively limit the use of a valuable addition to the evidentiary mediums now available to the trial court. Too little restriction could result in ingenious fraud and tampering.

In *Williams v. State*, 93 Okla. Crim. 260, 226 P. (2d) 989 (1951), a wire recording was admitted in evidence. Of the foundation necessary for its admission, the court said:

"It is our conclusion after fully considering this question that the rules determining the admissibility of a confession taken on a phonographic record or on a wire such as in the instant case or a disc are to be determined by the same rules as govern the taking of a confession by shorthand, which is later transcribed. That is, the party offering the wire recording in evidence must make a showing with reference to its preparation, that is, whether the mechanical device was sufficiently capable of taking the confession; *and also there should be a proper showing as to the manner of the preservation of the wire recording, that is, as to whether any changes have been made, deletions, or additions to the recording, and of the correctness. The genuineness of the authenticity of the recording must be established.*" (Italics ours.)

In *Ray v. State*, 213 Miss. 650, 57 So. (2d) 469 (1952), a police officer testified that the tape recording machine recorded every sound that was made; that it reproduced the confession exactly as it was given; that nothing had been added to it nor taken from it; that the tape recording had been in his possession, under lock and key, since it was

made, and that it was not tampered with nor changed in any respect; that the questions and answers reproduced on the recording were the exact questions propounded to the defendant and the answers given by him.

Of this, the court said:

"The preliminary proof as to the tape recording hereinabove set out met all requirements as to being an accurate reproduction of appellant's confession, and the confession having been shown to be free and voluntary, was admissible in evidence."

■ The trial court excluded from evidence a dictaphone recording in *Solomon, Inc. v. Edgar*, 92 Ga. App. 207, 88 S.E. (2d) 167 (1955), for the reason that a proper foundation had not been laid for its admission. The judgment was affirmed. The appellate court said:

"Let us then inquire what safeguards are necessary before such mechanical transcription devices may be used. A proper foundation for their use must be laid as follows: (1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress."

In view of the nature of wire and tape recordings, we do not feel that the rule announced by the Georgia court requires an excessive burden of preliminary proof to establish their admissibility.

■ After the recording had been admitted in evidence, defendant's (appellant's) counsel, by cross-examination, elicited further facts germane to its admissibility. Even considering these facts, a proper foundation still had not been laid under the above rule. For this reason, it was prejudicial error to admit the tape recording in evidence.

Although defendant's motion for a new trial must be granted for the reason indicated, we consider, in so far as

the record permits us to do so, the assignments of error relating to instructions given and refused. It may be helpful upon a retrial of this case.

Instruction No. 7 defines rape substantially in the language of the statute. RCW 9.79.010. Defendant excepted to the instruction on the ground that it "should have been one on attempted rape rather than rape."

■ Instructions Nos. 3 and 4 point out to the jury that in order to convict defendant the state must prove, beyond a reasonable doubt, (1) that defendant assaulted the named females, and (2) that the assault was made with *intent* to commit a felony, to-wit, rape. Instruction No. 6 defines assault. Instruction No. 7 defines rape in statutory language. It does not instruct the jury that it might consider means by which the crime charged could have been committed, other than those charged in the information. In this respect, the situation is distinguishable from that presented in *State v. Severns,* 13 Wn. (2d) 542, 125 P. (2d) 659 (1942). While it may not have been necessary to have used the all-inclusive language of the statute (RCW 9.79.010) in this particular instruction, the jury could not have been misled by it in view of the instruction preceding it.

■ Instruction No. 11 states that

". . . the law presumes a defendant to be innocent *until* proven guilty beyond a reasonable doubt . . ." (Italics ours.)

Defendant argues that the use of the word "until" presupposes that the jury will find him guilty.

RCW 10.58.020:

"Every person charged with the commission of a crime shall be presumed innocent *until* the contrary is proved by competent evidence beyond a reasonable doubt." (Italics ours.)

Since the instruction is in language almost identical with the statute, it cannot be said to be erroneous. *State v. Pavelich,* 153 Wash. 379, 387, 279 Pac. 1102 (1929).

■ Instruction No. 10 states, among other things:

"The law *merely* requires that the jury shall be satisfied

of the guilt of the defendant beyond a reasonable doubt . . ." (Italics ours.)

The word "merely" should be deleted. It is subject to the interpretation that the object to which it applies—the law—just escapes falling short of requiring that which it does require.

Instruction No. 22 is identical with the instruction quoted and approved in *State v. Austin,* 136 Wash. 499, 504, 240 Pac. 676 (1925).

■ The court did not err in giving instruction No. 26, which told the jury that, in arriving at a verdict, the subject of penalty or punishment was not to be considered. *State v. Hartwig,* 45 Wn. (2d) 76, 81, 273 P. (2d) 482 (1954).

■ The trial court was justified in refusing to give requested instruction No. 3. Its subject matter was fully covered by instruction No. 10.

■ Rule of Pleading, Practice and Procedure 10 (34A Wn. (2d) 75, effective at time of trial) requires that exceptions to instructions given and refused

". . . shall be sufficiently specific to apprise the judge of the points of law or questions of fact in dispute."

Defendant failed to assign cause for his exception to the court's refusal to give certain instructions. We cannot consider defendant's assignments of error Nos. 9 and 11.

We have carefully reviewed the remaining instructions to which defendant assigns error. When the entire instructions are read, with the questioned instructions in their proper place, we conclude that defendant's position was not prejudiced by them.

Judgment and sentence are reversed, with instructions to grant defendant a new trial.

MALLERY, HILL, and ROSELLINI, JJ., concur.