[No. 6101-9-III.   Division Three.   November 15, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
ALLEN ROBINSON, *Appellant.*

872

*Bradley B. Jones* and *Rigby & Jones,* for appellant (ap-pointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *William L. Downing, Deputy,* for respondent.

THOMPSON, J.—John Allen Robinson appeals his jury convictions of second degree assault and first degree mur-der, both committed while armed with a deadly weapon, a firearm. The primary issue concerns the Superior Court's failure to specifically instruct the jury the State had the burden of proving absence of self-defense beyond a reason-able doubt. In light of the recent holding in *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984), we find it was error not to instruct the jury the State must prove absence of self-defense beyond a reasonable doubt, but further hold it was harmless error. We affirm both convictions.

During the late winter, spring and summer of 1982, Mr. Robinson was involved in a dissolution proceeding initiated by his wife, Mildred. John Pruitt, Mr. Robinson's brother-in-law, testified that Mr. Robinson was agitated over the divorce, although Mr. Robinson denied this. On May 11, 1982, Mr. Pruitt received the following message on his Record-A-Call:

> This is John Robinson. Would you tell Mildred to get in touch with me with those kids right away or I will go into my drastic act and whoever has to suffer the consequences—whoever wants to have to suffer for it are the ones I can find like you, her sister, and anybody else that is related to her. Get the kids here in the morning.

Mr. Pruitt stated that he recognized the voice as that of Mr. Robinson. He notified the police, who told him the matter appeared to be a domestic dispute, but advised him to save the recording.

Then, on July 28, 1982, as Mr. Pruitt and his son approached their residence in their van, the son was shot in the arm. Mr. Pruitt testified the shot was fired by Mr. Robinson, who was seated in a brown vehicle which Mr. Pruitt believed was Mr. Robinson's Monte Carlo. The Seattle police contacted Mr. Robinson, who provided an alibi and stated that the Pruitts wanted him in jail so that Mildred could move into his house. He also pointed out that his Monte Carlo was in California. No charges were filed against Mr. Robinson at that time. Mr. Pruitt called Thomas Neville, Mrs. Robinson's attorney in the dissolution, and informed him of the shooting.

Shortly after 4 p.m. on August 2, Mr. Neville contacted Detective Michael Tando of the Seattle Police Department in connection with the Pruitt assault. About 4:30 p.m., Detective Tando received a call from Mr. Robinson. Detective Tando told him not to have any contact with the Pruitts, and that they were under surveillance.

Later that afternoon, Mr. Neville was shot and killed by Mr. Robinson in the lobby of Mr. Neville's office building. Richard Sanford, a clerk in a bookstore adjoining the lobby,

testified he heard three loud sounds in rapid succession and saw a man he identified as Mr. Robinson heading toward an exit. Mr. Robinson turned, looked at Mr. Neville, and walked back to him. Mr. Sanford then heard a fourth report and saw a flash of light from the midsection of Mr. Robinson. Klaus Zech, a janitor in the building, was also in the lobby. He testified he heard "three . . . loud bangs and one sort of followed after it . . ." He looked and saw Mr. Robinson standing over Mr. Neville holding "something".

Mr. Robinson fled the scene, but turned himself in to the police that evening. At the time of his arrest, Mr. Robinson stated that a third person not known to him shot Mr. Neville while Mr. Neville and Mr. Robinson stood in the lobby talking about the divorce. However, at trial, Mr. Robinson admitted his involvement, but stated he had acted in self–defense. He testified that he and Mr. Neville were discussing the divorce while walking toward the lobby exit when Mr. Neville stopped and signaled to a third person. According to Mr. Robinson, Mr. Neville saw that Mr. Robinson had observed the signal and screamed "Oh, my God". Mr. Neville then pulled back his coat and appeared to be searching for a gun. Mr. Robinson shot him when Mr. Neville drew an object out of his coat.

## The Murder Conviction

Mr. Robinson contends the court erred when it refused to specifically instruct the jury that the State had the burden of proving lack of self–defense beyond a reasonable doubt. We agree.

Here, the court instructed:

### No. 2
The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The plaintiff has the burden of proving each element of the crime beyond a reasonable doubt.

### No. 5
To convict the defendant John Allen Robinson of the crime of murder in the first degree . . . each of the following elements . . . must be proved beyond a reason-

able doubt:

(1) That on or about the second day of August, 1982, the defendant John Allen Robinson shot Thomas Neville, a human being;

(2) That the defendant acted with intent to cause the death of Thomas Neville;

(3) That the intent to cause the death was premeditated;

(4) That Thomas Neville died as a result of defendant's acts; and

(5) That the acts occurred in King County, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count I.

### No. 13

It is a defense to a charge of murder or manslaughter that the homicide was excusable or justifiable as defined in this instruction.

In *State v. McCullum*, 98 Wn.2d 484, 499, 656 P.2d 1064 (1983), the court stated that the failure to expressly allocate the burden of proof to the State is not necessarily reversible error, but that an express instruction is "preferable" in order to avoid jury confusion. The test for determining if instructions which do not expressly allocate the burden of proof are error is "whether the jury . . . could understand from the instructions as a whole, that the State bears the burden of proof on self–defense". *State v. Acosta, supra* at 622.

In *Acosta*, the defendant raised the issue of self–defense in a prosecution for second degree assault. The court refused to give an express instruction on the burden of proof on this issue, and instead used a pattern instruction which merely listed the statutory elements of second degree assault and instructed the jury the State must prove the elements beyond a reasonable doubt. Lack of excuse or justification was not among the statutory elements of the crime. The court also instructed that self–defense was a complete defense to second degree assault and that if the

evidence showed the defendant acted in self–defense, the jury's duty was to return a not guilty verdict.

The Supreme Court held in *Acosta* the instructions did not adequately inform the jury that the State must prove absence of self–defense. *Acosta,* at 623. Here, the instructions suffer from the same deficiencies found in *Acosta.* The instruction setting forth the elements of first degree murder did not include lack of excuse or justification as an item to be proved by the State, and the jury reasonably could infer from the self–defense instruction that the defendant bore the burden of proof on that issue.

We next must determine whether the error was harmless. Since the error infringed upon a constitutional right of the defendant, the error is presumed prejudicial, and the State has the burden of proving the error was harmless. *State v. Stephens,* 93 Wn.2d 186, 190–91, 607 P.2d 304 (1980). Constitutional errors cannot be deemed harmless unless they are harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Evans,* 96 Wn.2d 1, 5–10, 633 P.2d 83 (1981).

Our State Supreme Court and the United States Supreme Court have set out two alternative approaches in making this determination:

> (1) constitutional error is harmless only if it can be said beyond a reasonable doubt that it did not contribute to the verdict (hereinafter "contribution test"); and (2) constitutional error is harmless whenever it can be said beyond a reasonable doubt that the evidence not tainted by the error is so overwhelming that it *necessarily* leads to a finding of guilt (hereinafter "overwhelming evidence test").

*State v. Johnson,* 100 Wn.2d 607, 621, 674 P.2d 145 (1983). Application of the contribution test contemplates focusing on the constitutional error, asking whether it might have contributed to a guilty verdict. On the other hand, the overwhelming evidence test focuses on the untainted evidence and asks the question whether there remains over-

whelming evidence to support the jury verdict. As noted by Chief Justice Brachtenbach in his concurring opinion in *State v. Evans, supra,* the rule of harmless constitutional error is clear. What is not clear is the proper analysis or methodology an appellate court must use in determining if a constitutional error is harmless beyond a reasonable doubt. The problem is compounded in an instructional error case in that it is not possible to isolate the error with clinical precision since it involves the possible contamination of the jurors' perspective. An additional complication is the caveat that we cannot invade the province of the jury by becoming triers of fact or in speculating what they might do. Complications notwithstanding, when an appellate standard is established, implied in the setting of that standard is tacit permission to do that which is necessary to apply it. In order to apply the harmless error test, it is necessary to enter into a limited evidence weighing process. Doing so, we conclude that failure to instruct the jury that the State had the burden of disproving self–defense played a miniscule role in this trial. The instructional error did not contribute to the verdict and was harmless beyond a reasonable doubt because of overwhelming evidence that necessarily leads to a finding of guilty.

The State's evidence included eyewitness testimony, uncontroverted physical evidence, and the voluntary statement of Mr. Robinson given the evening of the incident. Witnesses recounted evidence that Mr. Robinson was seen one floor below Mr. Neville's office and waiting in the lobby of the building (the afternoon) just prior to the shooting. The witnesses testified to visual and auditory perceptions that four shots were fired from Mr. Robinson's handgun, and three entered Mr. Neville's back. The final shot was fired an appreciable time after the third. The State presented evidence Mr. Robinson had made a previous threat of violence (telephone message), had been involved in another violent act (second degree assault—nephew), and that Mr. Neville was a logical target for Mr. Robinson's hostility since Mr. Neville was aggressively representing

Mr. Robinson's wife in the dissolution proceeding. In the absence of explanation or controverting evidence, the State's proof constituted overwhelming evidence of guilt.

Mr. Robinson's ultimate defense rested upon his bare assertion that he thought Mr. Neville was pulling a gun on him and he shot Mr. Neville out of fear for his own well–being. This assertion was not corroborated by any of the eyewitnesses or physical evidence at the scene. We conclude that not only did the State prove guilt beyond a reasonable doubt, but disproved self–defense beyond a reasonable doubt. No gun was found on Mr. Neville; no eyewitness saw the person who, according to Mr. Robinson, was standing in the lobby and whisked away Mr. Neville's gun; Mr. Robinson presented no testimony of prior knowledge of violent acts on the part of Mr. Neville or Mr. Neville's propensity toward physical violence or a belief that Mr. Neville may have been carrying a gun or had threatened Mr. Robinson.[1] Additionally, Mr. Robinson totally destroyed his own credibility by telling two diametrically opposed stories. On the day of his arrest he said he saw Mr. Neville shot down by an unknown assailant. At trial he stated that although he killed Mr. Neville, he did so in self–defense. Consequently, we conclude that even if it be presumed the jury believed Mr. Robinson had the burden of proving self–defense, its erroneous perspective had no bearing on the verdict. The error could not have affected the final outcome of the case and was harmless beyond a reasonable doubt.

Mr. Robinson contends the court erred when it admitted documents from his dissolution action. We hold the documents were relevant, and the court did not abuse its discretion when it determined their probative value outweighed their prejudicial effect.

Mr. Robinson excepted to the admission of exhibits 5

---

[1] We are not stating Mr. Robinson had the burden of proving any such facts or had the burden of proving self–defense, but make note of the type of evidence that previously led our Supreme Court to find similar error warranted a new trial. *State v. Acosta*, 101 Wn.2d 612, 683 P.2d 1069 (1984); *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983).

through 11, 13 and 14. Those exhibits were:

Restraining order

Temporary order relating to child support and forbidding Mr. Robinson from possessing a firearm when he has contact with his wife

Notice of intent to withdraw by Mr. Robinson's attorney

Order to show cause

Order of contempt for failure to comply with the earlier orders

Order to show cause re contempt

Another order of contempt

Notice of intent to withdraw by Mr. Robinson's second attorney

Another order to show cause and setting the trial date for August 25, 1982

Generally, the documents show what the court ordered Mr. Robinson to do and not to do during the dissolution, his failure to obey some of those orders, and the fact that the orders were entered at the request of Thomas Neville, representing Mrs. Robinson.

ER 401 defines "relevant evidence":

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Here, the documents were offered to prove a bitter dissolution proceeding and Mr. Neville's vigorous representation of Mrs. Robinson, even to the extent of seeking contempt orders when Mr. Robinson disobeyed previous court orders. The documents were relevant in that they tended to prove motive for Mr. Robinson to assault his wife's nephew and murder her attorney.

ER 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence.

■ ER 404 excludes evidence of other acts by a defendant offered to prove character in order to show that he acted in conformity therewith. However, if the evidence is offered for some other reason such as to show motive, it may be admissible. But even though relevant and admissible under ER 404, that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Under ER 403, the court exercises its discretion in weighing the probative value of the evidence against its prejudicial effect and its decision will be disturbed only for an abuse of discretion. *State v. Robtoy,* 98 Wn.2d 30, 42, 653 P.2d 284 (1982); *State v. Goebel,* 40 Wn.2d 18, 24, 240 P.2d 251 (1952).

Here, the Superior Court admitted the documents, noting that in their absence, it could appear to the jury that Mr. Robinson's dissolution was amicable. The court further noted that not all of the documents from the dissolution would have been admissible, but the State had been very careful in not seeking all of them. The court weighed the effect of the evidence and determined its probative value outweighed its prejudice. We cannot say the ruling constitutes an abuse of discretion.

## THE SECOND DEGREE ASSAULT CONVICTION

The remaining issues relate to Mr. Robinson's conviction for second degree assault.

■■ First, Mr. Robinson contends it was error to deny his motion to sever the assault and murder charges. We disagree.

CrR 4.3 and 4.4 provide in part:

(a) **Joinder of Offenses.** Two or more offenses may be joined in one charge . . . when the offenses . . .
(1) Are of the same or similar character, even if not part of a single scheme or plan; or
(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan;

CrR 4.3(a)(1), (2).

**(b) Severance of Offenses.** The court . . . shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.

CrR 4.4(b). The Washington Supreme Court has characterized CrR 4.3 as a liberal joinder rule, vesting the trial court with "considerable discretion in matters such as joinder of offenses." *State v. Thompson,* 88 Wn.2d 518, 525, 564 P.2d 315 (1977). Although joinder should not be used to prejudice one charged with a crime, or deny him a substantial right, *State v. Smith,* 74 Wn.2d 744, 754–55, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934 (1972), the defendant bears the heavy burden of demonstrating that the trial court's denial of severance was an abuse of discretion. *State v. Hentz,* 32 Wn. App. 186, 190, 647 P.2d 39 (1982), *rev'd on other grounds,* 99 Wn.2d 538, 663 P.2d 476 (1983).

A defendant may be prejudiced by joinder for one or more of the following reasons:

> (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.

*Smith,* at 755 (quoting *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964)). In permitting joinder, the court noted the following elements as preventing prejudice to the defendant:

> (1) the strength of the state's evidence on each count, (2) the clarity of defenses to each count, (3) the court properly instructed the jury to consider the evidence of

each crime, and (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

*State v. Dowell,* 16 Wn. App. 583, 585, 557 P.2d 857 (1976); *State v. Harris,* 36 Wn. App. 746, 750, 677 P.2d 202 (1984).

Mr. Robinson argues that the two counts cannot be regarded as "of the same or similar character" because first degree murder under RCW 9A.32.030(1)(a)[2] requires premeditated intent and second degree assault under RCW 9A.36.020(1)(b) and (c)[3] requires only that the defendant act "knowingly". However, in *Smith,* the court permitted joinder of counts arising out of four separate incidents, each involving robbery coupled with either assault or murder. We hold that the murder and assault counts both were arguably part of a series of acts related to the dissolution and were sufficiently similar to justify joinder. Both crimes involved violence, the use of a firearm, and victims associated with Mrs. Robinson. *See also State v. Townson,* 29 Wn. App. 430, 628 P.2d 857 (1981), where the court upheld joinder of several counts arising from a series of events involving teenage boys living at the defendant's foster home.

Mr. Robinson next argues that even if joinder was proper, the denial of his motion for severance unduly prejudiced him. He claims prejudice is evidenced "by the factual discrepancies in the assault described by Pruitt as compared with that of the defendant, his son [who provided alibi testimony], and the prosecutor's stipulation that

---

[2]RCW 9A.32.030(1)(a) provides:

"(1) A person is guilty of murder in the first degree when:

"(a) With a premeditated intent to cause the death of another person, he causes the death of such person or of a third person; . . ."

[3]RCW 9A.36.020(1)(b) and (c) state:

"(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he: . . .

"(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or

"(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; . . ."

the Monte Carlo was located in California." He also contends that neither charge would have been admissible in a separate trial of the other charge.

Applying the *Smith* factors in evaluating the possible prejudicial effect of joinder, we conclude Mr. Robinson has failed in demonstrating the Superior Court abused its discretion in denying his motion for severance. First, the State's evidence on both counts included direct, eyewitness testimony. Second, Mr. Robinson's defense at the time of the motion for severance was the same as to both counts. He denied shooting either victim. Third, the jury was properly instructed to decide each count separately and that it should not let its verdict on one count control its verdict on the other.

The fourth factor concerns the admissibility of evidence of the other crime if the assault and murder charges had been tried separately. Under ER 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The comment accompanying this rule when it was proposed by the judicial council stated in part:

> The court must determine whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors. . . .
>
> . . . Whether evidence is admissible under this section is determined by reference to the considerations set forth in Rule 403.[4]

*State v. Tharp,* 96 Wn.2d 591, 595–96, 637 P.2d 961 (1981).

We hold that evidence of the entire sequence of events, beginning on July 28 and ending August 2, was necessary to proof of either offense, and, therefore, would have been admissible in separate trials under ER 404(b). The assault and the murder were inextricably intertwined. The State's

---

[4]*See* text of ER 403.

theory of the case was that Mr. Robinson's motive was revenge on his wife for initiating the dissolution proceedings and removing their children from his custody. Since she was inaccessible, he struck at those persons associated with her. First, he assaulted his nephew. When he was advised by Detective Tando that the police had his brother–in–law and his family under surveillance, he turned upon his wife's lawyer. The testimony of Mr. Pruitt, the investigating officers, and Mr. Robinson himself was that the dissolution explained the events in question. That is, Mr. Pruitt told the police Mr. Robinson shot at him in order to get back at Mildred; Mr. Robinson's version was that Mr. Pruitt was attempting to frame him and have him jailed so Mildred could move into his house. Mr. Robinson further stated to the police that he believed the third person he alleged fired shots that killed Mr. Neville was a person hired by Pruitt to kill or wound him.

Accordingly, we hold the assault and murder charges were properly joined; Mr. Robinson was not unduly prejudiced by the joinder, and the court did not abuse its discretion in denying severance.

Second, Mr. Robinson claims the court's admission of the Record–A–Call message left on John Pruitt's answering machine was error because it violated the privacy act, RCW 9.73, and it was not authenticated. We reject Mr. Robinson's contentions.

■ RCW 9.73.030(1)(a) and (2) provide in pertinent part:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual . . . to . . . record any:
(a) Private communication transmitted by telephone . . . between two or more individuals . . . without first obtaining the consent of all the participants in the communication; . . .
(2) Notwithstanding the provisions of subsection (1) . . . wire communications . . . (b) *which convey threats of . . . bodily harm . . .* may be recorded with the consent of one party to the conversation.

(Italics ours.) The word "convey" as used in RCW 9.73-.030(2)(b) recently has been defined by the Supreme Court as: "'to impart or communicate either directly by clear statement *or indirectly by suggestion, implication, gesture, attitude, behavior, or appearance*'." (Italics ours.) *State v. Caliguri*, 99 Wn.2d 501, 507–08, 664 P.2d 466 (1983) (quoting *Webster's Third New International Dictionary* 499 (1971)).

Mr. Robinson argues his message meant only that he would initiate legal proceedings to gain custody if he did not see his children. However, his message unambiguously states that "anybody" related to his wife will "suffer the consequences", not just his wife through loss of custody. We hold the message at the very least implies Mr. Robinson will inflict bodily harm on Mr. Pruitt and his relatives if he does not see his children. Thus, the message is admissible under RCW 9.73.030(2)(b) without proof of Mr. Robinson's consent to the recording.[5]

We next direct our attention to Mr. Robinson's claim the State did not authenticate the tape of the message. Before a recording may be admitted into evidence, a proper foundation for its use must be laid as follows:

> (1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress.

*State v. Williams*, 49 Wn.2d 354, 360, 301 P.2d 769 (1956) (quoting *Steve N. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 88 S.E.2d 167, 171 (1955)). *See also State v. Smith*, 85

---

[5]Our holding makes it unnecessary for us to address Mr. Robinson's arguments concerning the best evidence rule as it affects admission of evidence on the issue of whether Mr. Robinson consented to the recording. Under RCW 9.73-.030(2)(b), his consent is immaterial.

Wn.2d 840, 847, 540 P.2d 424 (1975).

Mr. Pruitt testified he bought the Record–A–Call in January 1982 and installed it according to instructions. He made the transmitting tape which advised the caller he was not home and suggested the caller leave a message. He identified exhibit 68 as the tape recording left in May 1982 by a caller who identified himself as Mr. Robinson. He recognized the voice as that of Mr. Robinson. When he called the police in May, they advised him to retain the tape. He did so by removing it from the machine and storing it in a separate piece of furniture until July 30 when he turned it over to Detective Tando. He made no changes in the tape while it was in his possession. Detective Tando testified he took custody of the tape on July 30, sealed it and placed it in the working case file. He stated he made no changes in the tape.

■ The Superior Court found the requirements for authentication had been established by the foregoing testimony. Mr. Robinson contends this ruling was error. He points to the lack of *expert* testimony regarding the general operation of the recording device, the operation of this specific machine, or the reliability of the machine. However, he cites no authority that an expert is required under the circumstances. An expert was used in *State v. Smith,* 85 Wn.2d at 847–48, but the *Smith* court does not hold that expert testimony is the only manner of establishing mode of operation and reliability. Finally, he attacks the evidence showing chain of custody of the tape as being "less than adequate". As noted above, Mr. Pruitt and Detective Tando's testimony establishes chain of custody. The recording was properly authenticated.

Finally, Mr. Robinson maintains his second degree assault conviction is not supported by substantial evidence. We disagree.

■ In reviewing the sufficiency of the evidence for conviction, the test to be applied by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact*

could have found the essential elements of the crime *beyond a reasonable doubt." State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). The jury here could have found Mr. Robinson was the perpetrator based upon Mr. Pruitt's eyewitness testimony. It rationally could have disregarded the alibi testimony as not credible, and Mr. Pruitt's statement that he thought Mr. Robinson was in his Monte Carlo as a witness mistake on an unimportant detail.

The convictions are affirmed.

GREEN, A.C.J., concurs.

McINTURFF, J. (dissenting)—I disagree with the majority's holding that the court's failure to adequately inform the jury of the State's burden of proof on self–defense was "harmless error."

The majority states that in an instructional error case, "it is not possible to isolate the error with clinical precision since it involves the possible contamination of the jurors' perspective." My colleagues also note they "cannot invade the province of the jury by becoming triers of fact or in speculating what they might do." I agree with these observations. What I cannot agree with is their conclusion that the failure to properly instruct the jury on the issue of self–defense "played a miniscule role in this trial." Majority, at 877. In my view, an appellate court cannot hold such an error harmless where, as here, the failure to instruct involved the question of who had the burden of proof on a disputed and essential element of the crime charged.

The due process clause of the fourteenth amendment to the United States Constitution requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Sandstrom v. Montana,* 442 U.S. 510, 520, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *Patterson v. New York,* 432 U.S. 197, 206–07, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977); *In re Winship,* 397 U.S. 358, 364, 25

L. Ed. 2d 368, 90 S. Ct. 1068 (1970). In *State v. Roberts,* 88 Wn.2d 337, 344–46, 562 P.2d 1259 (1977), the court determined the State had the burden of proving beyond a reasonable doubt the absence of self–defense in a murder prosecution arising under the "old" criminal code which provided that a killing was murder unless it was "excusable or justifiable." Laws of 1909, ch. 249, §§ 140, 141, 143, pp. 930–31. In *State v. McCullum,* 98 Wn.2d 484, 492–94, 656 P.2d 1064 (1983), the court held that the Legislature did not intend to reallocate the burden of proof when it removed the words "unless it is excusable or justifiable" from the new code's definition of homicide. RCW 9A.32-.030, .050, .060, .070. In any event, the court concluded that such a reallocation would be unconstitutional because self–defense negates intent which is expressly made an element of the crime of first degree murder. *See* RCW 9A.32-.030(1)(a); *McCullum,* at 494–96.

As early as *State v. Roberts, supra* at 346, our Supreme Court stated:

> The jury should be instructed as to the pertinent aspects of the law of justification in homicide cases and then simply informed that *the State has the burden to prove absence of self–defense beyond a reasonable doubt.*

(Italics mine.) While the failure to provide a specific instruction is not reversible per se, the jury must understand from the instructions as a whole that the State bears the burden of proof. *State v. Acosta,* 101 Wn.2d 612, 622, 683 P.2d 1069 (1984). In *Acosta,* at 623, the court held instructions which were similar in pertinent detail to those given to Mr. Robinson's jury were inadequate.

Thus, it is well established the State has the burden of proof of the elements of the crime, and lack of self–defense is an element of the crime of first degree murder. The crucial question is whether an instructional error affecting allocation of the burden of proof can be harmless. My analysis of *Sandstrom v. Montana, supra,* and *Connecticut v. Johnson,* 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969 (1983), leads me to conclude that such an error is harmless

only where the element of the crime is conceded or otherwise not in dispute.

In *Connecticut v. Johnson, supra* at 83, the Court stated:

We agree with the State that, in light of *Chapman [v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967)], these [previous] cases cannot be read for the broad proposition that instructional error of constitutional dimensions may *never* be harmless. *This is not to say, however, that any form of instructional error should be analyzed for harmlessness.*

(Some italics mine.) The issue there was whether an instruction in an attempted murder case that "Every person is conclusively presumed to intend the natural and necessary consequences of his acts" could be considered harmless. The Supreme Court said "no." The Court relied on its earlier decision in *Sandstrom* which involved a similar instruction. The *Sandstrom* Court noted at page 524:

A presumption which, although not conclusive, *had the effect of shifting the burden of persuasion* to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state.

(Italics mine.) Consequently, the error was not one appropriate for harmless error analysis:

If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made.

(Footnote omitted.) *Connecticut v. Johnson, supra* at 85–86.

Here, we are not dealing with a *presumption* that shifts the burden of proof, as in *Sandstrom* and in *Connecticut v. Johnson*. However, the instructional error at issue in this case, just as in the presumption cases, allowed the jury to improperly shift the burden of proof to the defendant on an essential element of the crime. If the jury incorrectly believed the burden of proof was on Mr. Robinson, then it may have viewed his uncorroborated testimony as insufficient to *establish* the existence of self–defense beyond a reasonable doubt. On the other hand, if the jury had correctly understood the burden was on the State, it may have viewed the same testimony as sufficient to *create* a reasonable doubt. The focus is on how the instructional error affected the jury's consideration of the evidence. Hence, the harmless error tests which focus on the *evidence* are irrelevant. *See Connecticut v. Johnson, supra* at 85–86. Although I agree with the majority that Mr. Robinson's self–defense claim is doubtful, that is not enough. Mr. Acosta's claim was similarly doubtful, yet our Supreme Court refused to find the instructional error harmless there. *State v. Acosta, supra.* I firmly believe that my role as an appellate court judge prohibits me from speculating on the effect of this erroneous instruction on the jury's determination of an essentially disputed factual matter.

Accordingly, with constraint, I would reverse Mr. Robinson's conviction of first degree murder and remand for trial with proper instructions. Since Mr. Robinson did not claim self–defense in the second degree assault charge, the instructional error could not have affected his conviction thereunder. I would therefore affirm that portion of the judgment against him.

Review denied by Supreme Court January 18, 1985.