[No. 5638–4–III.   Division Three.   November 15, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT
JOSEPH MARTINEAU III, *Appellant*.

*John W. Wolfe,* for appellant (appointed counsel for appeal).

*Joseph Panattoni, Prosecuting Attorney,* and *David H. Gorrie, Deputy,* for respondent.

MUNSON, C.J.—Albert Joseph Martineau III appeals his second degree murder conviction. He contends the jury instructions unconstitutionally placed the burden of proving self–defense on him, and he contends "justifiable homicide" was inadequately defined for the jury. We affirm.

Martineau, his girl friend, and Jamie Grenstad lived together in Kittitas County, where Martineau and Grenstad

cared for a marijuana crop. The girl friend was present, hiding in a closet, when Martineau shot and killed Grenstad. She testified an altercation began between Martineau and Grenstad in Grenstad's bedroom. The two men moved into the living room; after approximately 5 minutes, Grenstad returned to his room and closed the door. Martineau then went to Grenstad's room and shot him in the stomach. During the next 20 minutes, Grenstad was still alive and the two men conversed. The girl friend heard Martineau strike Grenstad with "nun–chu–ka" (a martial arts weapon) and Grenstad ask Martineau if he would take him to the hospital. Martineau declined to do so. After additional conversation, Grenstad pleaded with Martineau to put him out of his misery. The girl friend testified Martineau left Grenstad's bedroom, returned to the living room, reloaded his shotgun, and then shot Grenstad in the head. Martineau admitted the killing, but steadfastly maintained it was done in self–defense because Grenstad had a gun within reach and had threatened to kill him.

The homicide took place in April 1981 but was not reported until June 1982; the body had been buried in King County. Experts testified the cause of death was a gunshot wound in the face, from a 12–gauge shotgun fired from 1 foot or less. They classified the death as a homicide, but gave no opinions as to whether the fatal shot was fired in self–defense.

Martineau was charged with first degree murder and convicted of second degree murder. Because Martineau admitted the killing, the only issues before the jury were whether the killing was justified, and the degree of murder if it was not justified.

Martineau first contends the jury instructions affirmatively placed the burden of proving self–defense on him, in violation of *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984), *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983), and *State v. LeBlanc,* 34 Wn. App. 306, 660 P.2d 1142, *review denied,* 100 Wn.2d 1021 (1983). The State had the burden to prove absence of self–defense beyond a

reasonable doubt here, because self–defense would negate the element of intent in second degree murder. *State v. McCullum, supra.*

██ In *State v. McCullum, supra* at 498–99, the Supreme Court held "for this and future cases", specific burden of proof instructions, while technically not necessary, would be "preferable". The court clarified *State v. McCullum, supra,* in *State v. Acosta, supra,* stating retroactivity was not an issue in *State v. McCullum, supra. State v. Acosta, supra* at 622. Rather, the instructions are to be read as a whole to determine whether the jury was informed, or could understand from the instructions, that the State has the burden of proof on self–defense. *State v. Acosta, supra* at 622.

> The jury should be informed in some unambiguous way that the State must prove absence of self–defense beyond a reasonable doubt.

*State v. Acosta, supra* at 621.

Turning to the instructions in this case, the jury was given the following definition of first degree murder:

> A person commits the crime of murder in the first degree when, with a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person *unless the killing is justifiable.*

(Italics ours.) Instruction 5 (WPIC 26.01). The jury was instructed regarding second degree murder:

> If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, the defendant may be found guilty of any lesser crime, the commission of which is necessarily included in the crime charged, if the evidence is sufficient to establish the defendant's guilt of such lesser crime beyond a reasonable doubt.
>
> *The crime of Murder in the First Degree necessarily includes the lesser crime of Murder in the Second Degree.*
>
> When a crime has been proven against a person and there exists a reasonable doubt as to which of two or

more degrees that person is guilty, he or she shall be convicted only of the lowest degree.

(Italics ours.) Instruction 8 (WPIC 4.11). The jury was instructed the State has the burden to prove each element of the crime beyond a reasonable doubt (instruction 3, WPIC 4.01) and on the definitions of homicide and intent.[1]

Self-defense is set forth in instruction 10 (WPIC 16.02):

It is a defense to a charge of Murder that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of the slayer when the slayer reasonably believes that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time.

The jury was also given two additional instructions on the definition of self-defense.[2]

---

[1] "Homicide is the killing of a human being by the voluntary act of another and is either murder, manslaughter, excusable homicide or justifiable homicide." Instruction 4 (WPIC 25.01).

"A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime." Instruction 7 (WPIC 10.01).

[2] "The kind and degree of force which a person may lawfully use in self-defense is limited by what a reasonable person in the same situation as Albert Joseph Martineau, III, was in this case, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by law as excessive.

"A person is not entitled to use all the force which he believes necessary to repel an attack, he may use that degree of force necessary to protect himself which a reasonably prudent man would have used under the conditions appearing to him at that time." Instruction 11.

"When one is assaulted in a place where he has the right to be and is placed in danger, either real or apparent, of losing his life or of suffering great bodily harm at the hands of his assailant, he is not required to retreat or to endeavor to escape, but may stand his ground and repel force with force, even to taking the life of his assailant if necessary, or in good reason apparently necessary, for the preservation of his own life or to protect himself from great bodily harm." Instruction 12.

We hold these instructions, when read as a whole, unambiguously informed the jury of the State's burden to disprove self–defense. *State v. Acosta, supra.* Granted, the "to convict" instruction did not affirmatively place the burden on the State.[3] However, the Supreme Court has held the jury need not be given a specific instruction that the State bears the burden of proof on self–defense, where the jury could infer the State had the burden from the definitions of recklessness and self–defense. *State v. Hanton,* 94 Wn.2d 129, 614 P.2d 1280, *cert. denied,* 449 U.S. 1035, 66 L. Ed. 2d 497, 101 S. Ct. 611 (1980). In *State v. Acosta, supra* at 622, the Supreme Court stated:

> [C]ontrary to what was said in *Hanton,* we *now believe* that the *better practice* is simply to give a separate instruction clearly informing the jury that the State has the burden of proving the absence of self–defense beyond a reasonable doubt.

(Italics ours.) Thus, the fact the elements instruction did not specifically allocate the burden of proof is not per se reversible error. And while the sufficiency of the instructions in this area no longer depends upon whether the defendant had the opportunity to argue his theories, *State v. Acosta, supra* at 621–22, Martineau *did* argue the State's burden of disproving self–defense beyond a reasonable doubt, without objection.

Martineau next contends the instructions inadequately defined "justifiable homicide". Defendant's proposed

---

[3] "To convict the defendant of the crime of murder in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 17th day of April, 1981, the defendant shot James Arvid Grenstad with a shotgun;

"(2) That the defendant acted with intent to cause the death of James Arvid Grenstad;

"(3) That James Arvid Grenstad died as a result of the defendant's acts; and

"(4) That the acts occurred in Kittitas County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, or lack of evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty." Instruction 9 (WPIC 27.04).

instruction 7 is based on RCW 9A.16.050 and WPIC 16.02 and 16.03. The instruction provides:

Homicide is justifiable and therefore not a crime when committed in the lawful defense of the slayer when the slayer reasonably believes that the person slain intends to commit a felony, inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time.

Homicide is also justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer, in the presence of the slayer or upon or in a dwelling or other place of abode in which the slayer is present.

The court's instruction 10 omits the last paragraph, concerning actual resistance of a felony. Martineau contends that because the jury was not given the complete definition of justifiable homicide, it did not learn of every element of the crime charged and he was therefore denied due process. *Compare State v. Davis*, 27 Wn. App. 498, 618 P.2d 1034 (1980) (due process requires jury to be instructed as to each element of robbery because legal definition of robbery is not a matter of common understanding) *with State v. Pawling*, 23 Wn. App. 226, 597 P.2d 1367 (1979) (assault not defined in statute is a matter of common understanding; therefore, it need not be defined for jury).

■ The court's instruction was approved in *State v. Jones*, 95 Wn.2d 616, 628 P.2d 472 (1981), and in *State v. Heath*, 35 Wn. App. 269, 666 P.2d 922, *review denied*, 100 Wn.2d 1031 (1983). Martineau could argue the more narrow actual resistance of a felony within the broader language of reasonable belief of intent to commit a felony. *See State v. Mark*, 94 Wn.2d 520, 618 P.2d 73 (1980).

The instructions correctly stated the law as it was at the time of trial and as has subsequently been interpreted in *State v. Acosta, supra*, and *State v. McCullum, supra*.

Affirmed.

GREEN, J., concurs.

McINTURFF, J. (dissenting)—The majority correctly states the law. That is, the instructions, taken as a whole, must make it clear to the jury that the State has the burden of proving the absence of self–defense beyond a reasonable doubt. *State v. Acosta,* 101 Wn.2d 612, 621, 683 P.2d 1069 (1984). However, I disagree with the majority's holding that the instructions given the jury were adequate under this standard.

The instructions given Mr. Martineau's jury are similar in pertinent detail to the instructions which were disapproved in *Acosta,* at 614. Specifically, the court advised the jury that it must return a guilty verdict if it found the State proved each of the listed elements of second degree murder beyond a reasonable doubt. As in *Acosta,* the jury was not told in the elements instruction that the force used must be unlawful, wrongful, or without justification or excuse. As in *Acosta,* the placement of the instruction defining self–defense immediately after the elements instruction may have led the jury to believe by negative inference that the State had no burden with respect to self–defense.[4]

I would also hold that the instructional error was not harmless. At least two distinct tests have emerged for determining whether a constitutional violation is harmless: (1) the error is harmless only when it can be said beyond a reasonable doubt that it did not contribute to the verdict, and (2) the error is harmless whenever it can be said beyond a reasonable doubt that the evidence not tainted by the error is so overwhelming that it *necessarily* leads to a finding of guilt. *State v. Acosta, supra* at 624.

---

[4]The State points to instruction 5, which excludes justifiable killings from its definition of murder. Unfortunately, the cited instruction does not clear up the ambiguity regarding the burden of proof created in other instructions. The definition instruction does not purport to touch on the question of which party had the burden.

In my view, an error in the burden instructions taints *all* the evidence because the jury considers the proof in light of the instructions. See discussion in *State v. Robinson,* 38 Wn. App. 871, 691 P.2d 213 (1984) (McInturff, J., dissenting). Here, both Mr. Martineau and the State offered testimony supporting their separate versions of the circumstances of the killing. I cannot say on review that the jury's guilty verdict was not influenced by a misconception, based upon the instructions, of which party had the burden of proof on self–defense. Our Supreme Court has spoken. Simply, there is no clear statement to the jury, as mandated by *Acosta,* that the State must prove beyond a reasonable doubt the absence of self–defense.

With constraint, I would reverse Mr. Martineau's conviction and remand for a new trial.

Reconsideration denied December 11, 1984.

Review denied by Supreme Court February 15, 1985.