[No. 6793-9-III.   Division Three.   June 11, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. CLYDE WAVERLY FONDREN, *Appellant*.

*Clyde Waverly Fondren,* pro se, *J. Adams Moore, Jr., Dobbs, Moore & Kirkevold,* and *Michael A. Frost,* for appellant.

*L. Eugene Hanson, Prosecuting Attorney,* for respondent.

MUNSON, J.—Clyde Fondren appeals his second degree manslaughter conviction for the death of Spencer Petrin, contending: (1) the instructions did not unambiguously place the burden of proving absence of self–defense or accident on the State; (2) the evidence was insufficient; (3) improper rebuttal evidence was admitted; and (4) there was cumulative error in the form of juror misconduct, prosecutorial misconduct, denial of a change of venue motion, evidence of the victim's character, and a warrantless search of Fondren's car. In his pro se brief, Fondren joins in many of the above arguments, and also contends: (5) evidence of his character as a racist was improperly admitted, and (6) the prosecutor had a duty to disclose the fact a witness failed a

polygraph examination. We reverse.

During the evening of September 24, 1982, there was an altercation between Fondren and Changsu Kim at the Trout Lake Tavern. Kim struck the first blow, but claimed it was in response to a derogatory remark by Fondren. Fondren claimed Kim walked up and said he had a friend who did not like Fondren, and then hit him. Tavern personnel removed Kim, but Fondren, his wife, and their houseguest, Tom Oden, stayed. Several patrons told Fondren that Kim and Skip Theisen were waiting outside to "get" the Fondrens, and they might have a gun. Fondren saw Kim attempt to reenter the tavern at least twice. Eventually, Theisen and Fondren conversed, and Theisen allegedly told Fondren he was upset because the Fondrens had taken away the Theisen family farm. (Fondren, then age 38, had purchased the farm from Theisen's parents; Theisen was 19 years old at the time of the shooting.) Fondren allegedly explained to Theisen someone else would have purchased the farm if the Fondrens had not. Theisen and Fondren then shook hands; Theisen appeared calm. Theisen denied being angry about the farm and did not recall talking about it to Fondren.

The testimony concerning the shooting of Spencer Petrin differs in several respects. Theisen testified he went to the Fondrens' at approximately 2 a.m. September 25 to "get . . . everything straightened out" between Fondren and Kim. Petrin followed Theisen because he knew Theisen had been drinking and wanted to make sure he got home, or if he did not go home, that there would be no trouble. Theisen testified he was standing at the bottom of the Fondrens' driveway when Fondren and Oden came down and jumped him; then Fondren left and returned with the gun. Oden and Theisen testified they were fighting on the ground, away from the struggle for the gun, although immediately after the shooting, Theisen told a neighbor he was struggling with Fondren for the gun when it went off.

On the other hand, Fondren testified he, his wife, and Oden stayed at the tavern until it closed, fearing to venture

outside. They then drove to the farm, which is in a sparsely populated area on a dead–end road. When they arrived, Theisen's car was parked partway up their driveway, which is approximately two–tenths of a mile long. In addition, an unfamiliar pickup was parked on a nearby easement road. Fondren and Oden called out Theisen's name and, receiving no answer, Oden got out of the car and walked back down the driveway looking for the intruders. The Fondrens drove up to the house because Fondren was anxious about his 76–year–old mother who was in very fragile health. Then Fondren and his mother heard Oden yelling for help, and Fondren grabbed his double–barreled shotgun and some shells; his wife drove him down the driveway toward Oden, who was struggling with Theisen and Petrin. Fondren testified he brought the gun to protect Oden, himself, his wife, and his mother. He was afraid of what he might find after the threats conveyed to him earlier in the evening. Fondren vigorously denied pointing the gun at anyone. He indicated he thought its mere presence would stop the fight; momentarily it did. Then either Petrin or Theisen jumped at the gun. A struggle ensued; a shot went into the air. A few seconds later, a second shot killed Petrin instantly.

Fondren testified he had his hands up on the barrel when the fatal shot was fired. He believed at least two others were struggling for the gun. No identifiable fingerprints were found on the gun. Oden and Fondren also testified that after Petrin was shot, Theisen picked up the empty gun and attempted to fire it at them.

Fondren was charged with second degree felony murder, based on second degree assault. There was extensive testimony at trial regarding the events at the tavern which preceded the shooting. It was undisputed that while there Theisen and his friends, except for Petrin, were intoxicated. After 3 days of deliberation during which the jury twice asked the judge to define "criminal conduct", the jury returned a guilty verdict of second degree manslaughter and a special deadly weapon finding. Fondren appeals.

Fondren initially contends the instructions failed to

affirmatively place upon the State the burden of disproving self–defense or accident. He argues *State v. Acosta*, 101 Wn.2d 612, 683 P.2d 1069 (1984) and *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983) mandate a new trial. We agree.

The State argues self–defense is not an issue because Fondren denied pulling the trigger. *State v. Aleshire*, 89 Wn.2d 67, 568 P.2d 799 (1977); *State v. Safford*, 24 Wn. App. 783, 604 P.2d 980 (1979). However, Fondren testified he got the gun and came to the aid of Oden, who was being attacked by Theisen and Petrin. Fondren also testified he was afraid for his mother. In light of the events at the tavern, this was not a case of mere trespassing, as portrayed by the State. *See State v. Theroff*, 95 Wn.2d 385, 622 P.2d 1240 (1980).

The State concedes Fondren was entitled to an excuse or accident instruction. *See State v. McCullum, supra* at 500 (modifying *State v. Burt*, 94 Wn.2d 108, 614 P.2d 654 (1980), which was an excusable homicide case); *State v. Mercer*, 34 Wn. App. 654, 663 P.2d 857 (1983) (holding *McCullum* applies to excusable homicide cases). But the State also argues there is no element of intent in second degree manslaughter to negate. *State v. Foster*, 91 Wn.2d 466, 589 P.2d 789 (1979); *State v. Sill*, 47 Wn.2d 647, 289 P.2d 720 (1955). *State v. Acosta, supra* at 618, settles the issue by pointing out the jury instructions would become unbearably complicated if the State bore the burden on intent but defendant bore the burden on knowledge and other mental states.

Fondren proposed instructions specifically placing upon the State the burden of disproving accident or self–defense. Although *State v. McCullum, supra,* was decided on January 6, 1983, and Fondren's trial began the following March, apparently neither the prosecutor, defense counsel, nor the trial court was aware of it. The court declined to give Fondren's proposed instructions. The court's instructions basically tracked those approved in *State v. Martineau*, 38 Wn. App. 891, 691 P.2d 225 (1984), *review denied*, 103

Wn.2d 1020 (1985), a pre–*McCullum* trial.

If justification or excuse would negate an essential element of the crime charged, then due process requires the State to disprove justification or excuse beyond a reasonable doubt. *State v. Acosta, supra* (self–defense negates knowledge); *State v. McCullum, supra* (self–defense negates intent). *See also State v. Hanton,* 94 Wn.2d 129, 614 P.2d 1280, *cert. denied,* 449 U.S. 1035, 66 L. Ed. 2d 497, 101 S. Ct. 611 (1980) (self–defense negates recklessness); *State v. Burt, supra* (excuse may negate criminal negligence).

In *State v. McCullum, supra* at 498–99, the court held, "for this and future cases", the jury should be informed the State has the burden to prove absence of self–defense beyond a reasonable doubt.

> [W]e feel this is the better approach . . . at least when a specific instruction is requested by the defendant. A specific instruction on the burden of proof as to self–defense should serve three desirable ends: (1) clarify burden of proof questions and reduce the chances for jury confusion; (2) make appellate review of such issues easier, especially as to sufficiency of the evidence challenges; and (3) reduce the likelihood that future convictions would have to be reversed for errors similar to the one presented here.

*State v. McCullum, supra* at 500.

In *Acosta,* the court attempted to clarify its holding in *McCullum.* The court stated the retroactivity of *McCullum* was not intended to be an issue; rather, the issue is whether the jury could understand from the instructions that the State bears the burden on self–defense. *State v. Acosta, supra* at 622.

> This is what was meant in *McCullum*; a specific instruction is preferable, but failure to provide one is not reversible *per se* so long as the instructions, taken as a whole, make it clear that the State has the burden. We adhere to this reasoning. The jury should be informed in some unambiguous way that the State must prove absence of self–defense beyond a reasonable doubt. The defendant is entitled to a correct statement of the law,

and should not be forced "*to argue* to the jury that the State [bears] the burden of proving absence of self-defense." (Italics ours.) [*State v. Savage,* 94 Wn.2d 569, 582, 618 P.2d 82 (1980).] Rather, the defense attorney is only required to argue to the jury that the facts fit the law; the attorney should not have to convince the jury what the law is. Thus, . . . we now believe that the better practice is simply to give a separate instruction clearly informing the jury that the State has the burden of proving the absence of self-defense beyond a reasonable doubt. [*State v. Roberts,* 88 Wn.2d 337, 346, 562 P.2d 1259 (1977).]

*State v. Acosta, supra* at 621–22. The court emphasized:

[t]he real import of *McCullum* was to express our strong preference for clear and unambiguous instructions on the burden of proof, so that the issue of the adequacy of instructions would arise less frequently.

*State v. Acosta, supra* at 622.

We have recently applied the *Acosta* balancing test to two pre–*McCullum* trials: *State v. Martineau, supra* (no error); *State v. Robinson,* 38 Wn. App. 871, 691 P.2d 213 (1984) (error, but harmless), *review denied,* 103 Wn.2d 1015 (1985). *See also State v. Heath,* 35 Wn. App. 269, 666 P.2d 922 (no error), *review denied,* 100 Wn.2d 1031 (1983); *State v. LeBlanc,* 34 Wn. App. 306, 660 P.2d 1142 (reversible error), *review denied,* 100 Wn.2d 1021 (1983). While *McCullum* and *Acosta* do not mandate the inclusion of the State's burden of proof to disprove excuse or justification within the elements or "to convict" instruction, a pragmatic solution to this issue is to do so. Under the prior homicide statutes a felony homicide was described as *without excuse or justification. State v. McCullum, supra* at 491. If the evidence supports the giving of an instruction defining excusable or justifiable homicide, we believe the better position is to revert to the standard elements instruction formerly in use and include those issues therein. *See* Comment, WPIC 26.06. Another solution is to give a separate instruction simply and clearly informing the jury of the State's burden, if requested by the defendant.

Having held the instructions were erroneous, a further issue is whether the error was harmless. *State v. Acosta, supra; State v. Robinson, supra.*

Justification and excuse were the key issues at trial, *i.e.,* whether Fondren had reason to fear Theisen and whether Fondren held the trigger when it discharged. Fondren's self–defense claims are summarized above. Regarding accident, the smeared fingerprint evidence taken from the gun was consistent with a struggle. Oden and Theisen testified they did not see the shooting; the Fondrens testified the gun discharged during a struggle. The pathologist testified Petrin was shot behind the left ear from a distance of 18 inches, plus or minus 6 to 10 inches; the gun had been pointed from ahead of center toward the back, not from above or behind. Under either harmless error test as set forth in *State v. Acosta, supra* at 624, we cannot say the error was harmless. Fondren is entitled to a new trial under proper instructions.

█ Fondren next contends the evidence was insufficient to support his conviction of second degree manslaughter. The test for sufficiency of the evidence is whether, viewed in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

No one actually saw Fondren pull the trigger and no identifiable fingerprints were recovered. However, Fondren admitted at least having a hold on the gun when it discharged. Petrin was shot from a distance of 8 to 28 inches. A jury might infer Fondren overreacted to the situation by bringing a loaded gun to the scene, and might view Theisen and his friends as harmless youths. A jury might rationally decide a reasonable person would not act as Fondren did, and that his conduct was criminally negligent. There was sufficient evidence of second degree manslaughter.

Fondren argues Cynthia Pelona's rebuttal testimony was improperly admitted. We do not reach this issue because it is unlikely it will recur. Regarding Fondren's cumulative error contention, we need not address the alleged juror and

prosecutorial misconduct in light of our reversal on the instructions issue. We note the trial court will be free to reconsider venue. *See State v. Stiltner,* 80 Wn.2d 47, 491 P.2d 1043 (1971).

Fondren correctly asserts evidence of the victim's peaceful character is only admissible to rebut evidence that the victim was the first aggressor. ER 404(a)(2); *State v. Bius,* 23 Wn. App. 807, 599 P.2d 16 (1979). Furthermore, evidence of a peaceful character is presented through testimony of reputation, not specific instances of conduct. ER 405(a); *State v. Bius, supra.* Evidence of specific acts may be admissible for the limited purpose of showing whether the defendant had a reasonable apprehension of danger. Comment, ER 404. However, there was no issue of apprehension of danger from Petrin; the Fondrens did not know who Petrin was. *State v. Walker,* 13 Wn. App. 545, 547–48, 536 P.2d 657 (1975).

■ Fondren argues the gun should have been suppressed. Although the gun was found in plain view on the floor of the backseat of Fondren's car, no exigent circumstances were shown to justify its seizure without a warrant. Assuming arguendo there was error, it was harmless because there was other abundant evidence of what happened. *State v. Myrick,* 102 Wn.2d 506, 514–15, 688 P.2d 151 (1984). The evidence taken from the gun was consistent with the testimony, *i.e.,* there was a struggle during which two shots were fired and the stock was broken.

■ In his pro se brief, Fondren contends he was portrayed as a racist because he had recently moved to Klickitat County from the South. The State attempted to introduce evidence that Fondren had poured beer on an Indian woman and had been aggressive toward a black man during the evening of September 24. The woman could not identify Fondren. The court ordered her testimony stricken and instructed the jury to disregard it. The jury is presumed to follow the court's instructions. *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *Braxton v. Rotec Indus., Inc.,* 30 Wn. App. 221, 633 P.2d 897 (1981). There was con-

flicting testimony whether Fondren had acted aggressively toward the black man; the man himself could not recall the incident, but acknowledged a drinking problem. There are occasions when witnesses do not testify as the party calling them believes they will. These may be two instances of that fact of life. The court on retrial may be called upon to exercise its discretion under ER 403 if these witnesses are called.

Lastly, Fondren contends there was prosecutorial misconduct in failing to timely disclose the fact Theisen failed a polygraph examination and in failing to order a second examination. CrR 4.7. Results of polygraph examinations are not admissible at trial absent a stipulation. *State v. Grisby,* 97 Wn.2d 493, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983); *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171, *cert. denied,* 439 U.S. 870, 58 L. Ed. 2d 182, 99 S. Ct. 200 (1978). Therefore, knowledge of the first results or ordering a second examination would have availed Fondren nothing.

Reversed and remanded for a new trial.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Review denied by Supreme Court September 20, 1985.