[No. 7135–9–III.   Division Three.   October 7, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBIN LYNN YAPP, *Appellant.*

*Richard L. Cease, Public Defender,* and *Brian C. O'Brien, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Charles P. Schumacher, Deputy,* for respondent.

THOMPSON, J.—Robin Lynn Yapp appeals his conviction for first degree rape and unlawful imprisonment, contending the hypnotized victim's testimony should have been suppressed and her polygraph results admitted. We affirm.

K.H., age 16, was walking on Crestline Street in the city of Spokane at approximately 2:30 a.m. She noticed a blue pickup truck drive past her. Shortly thereafter, she became fearful when she noticed a man walking behind her, prompting her to cross over to the other side of the street. The man followed her across the street, grabbed her, put a gun to her head, and said, "Follow me and don't scream or I will kill you". K.H. was forced into a blue pickup where silver duct tape was placed over her eyes and used to bind her hands behind her back.

The suspect drove K.H. to a field and raped her. She was then driven to a house, raped three additional times, and forced to commit fellatio. At approximately 7:30 a.m., the suspect drove K.H. to a field and released her. The police, through the secret witness program, printed the suspect's description and a description of his truck and house based on information provided by K.H. One of the names supplied to the police through the secret witness program was Robin Yapp.

Because of inconsistencies in K.H.'s statements, she was asked by the police to take a polygraph exam. The polygraph detected deception in three areas: (1) the point of abduction; (2) K.H.'s failure to admit she was raped in the truck; and (3) K.H.'s failure to admit she was forced to commit fellatio.

K.H., on her own accord, underwent hypnosis. It should be noted that K.H. previously asked the police to hypnotize her, but her request had been refused. After the hypnosis, K.H. explained the reasons for her previous inconsistencies. K.H. had told the police the abduction took place closer to home because she was afraid if her father knew she was approximately a half mile from home at that late hour, he would blame the rape and kidnapping on her. K.H. did not mention the rape in the truck because it was embarrassing, and she did not mention being forced to commit fellatio because that was even more embarrassing. However, K.H.'s description of Mr. Yapp, his truck and his house did not vary after hypnosis.

Mr. Yapp's pretrial motion to suppress K.H.'s testimony because she had been hypnotized was granted in part and denied in part. The court found the documented police reports and the information obtained pursuant to execution of the search warrant provided ample corroboration and independent verification of all of K.H.'s testimony except for the rape in the truck. Because the rape in the truck was not documented prior to hypnosis, the State was precluded from mentioning it. However, during cross examination of K.H., Mr. Yapp brought this rape to the jury's attention. The State's motion to exclude all references to K.H.'s polygraph results was granted over Mr. Yapp's objection that the results were admissible for impeachment. The jury found Mr. Yapp guilty of first degree rape and unlawful imprisonment. He was given an 82–month sentence.

The first issue raised by Mr. Yapp is whether the trial court erred by allowing K.H. to testify despite the fact she had been hypnotized. Three recent cases, *State v. Martin,* 101 Wn.2d 713, 684 P.2d 651 (1984), *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984) and *State v. Coe,* 101 Wn.2d 772, 684 P.2d 668 (1984), set forth the circumstances under which a hypnotized witness may testify at a criminal trial. The fact that a person has been hypnotized before trial does not alone preclude that witness from testifying. A witness may testify to that which was known before hypno-

sis, provided the appropriate procedural safeguards are present. *Martin,* at 714; *Laureano,* at 752; *Coe,* at 786.

The appropriate procedural safeguards are: (1) the trial court must limit testimony to the witness' prehypnotic memory of events; (2) absent some independent verification that the witness' testimony consists of prehypnotic memory, the propriety of its admission is questionable; (3) any uncertainty should be resolved in the opponent's favor; (4) a detailed record of the witness' prehypnotic memory should be preserved as the party offering the testimony will have the burden of establishing what the witness remembered prior to the hypnosis; (5) opposing counsel must be afforded the opportunity to demonstrate to the jury that a witness has been subjected to hypnosis; (6) if the judge admits the testimony, the opponent must be given the opportunity to show the possible effect of the hypnosis on the witness' testimony and the manner in which the hypnosis was conducted; (7) special jury instructions regarding the hypnosis may be warranted. *Martin,* at 722–23.

During the pretrial suppression hearing, the court heard testimony from K.H., two police officers, two rape crisis volunteers, and the hypnotherapist. A detailed record of what K.H. knew and the information she provided the police prior to being hypnotized was presented to the court in four police reports and a prehypnotic secret witness report. The court determined the prosecution had provided ample corroboration and independent verification of K.H.'s prehypnotic memory as to the description of Mr. Yapp, including the details concerning his appearance, the description of the truck, the description of the house, the floor plan of the house, the furnishings in the house, and the presence of a Doberman dog.

■ Although K.H. did not identify Mr. Yapp from the photographic lineup until after being hypnotized, 9 days before being hypnotized she told the police she would recognize the suspect if she saw him again, and she testified at trial that prior to being hypnotized she had a clear picture in her mind of the person who kidnapped and raped her.

The hypnotist was not given any information by the police, he did not know the details of the abduction and kidnapping, he did not hypnotize K.H. in order to prompt an identification of the assailant, and he did not ask questions during the time K.H. was under hypnosis, other than to tell her to narrate what occurred. Thus, although K.H. did not actually identify Mr. Yapp until after hypnosis, the hypnosis did not affect her identification of Mr. Yapp; it was based on her prehypnotic memory.

*State v. Laureano, supra,* is distinguishable from this case. In *Laureano,* a key prosecution witness was hypnotized to enhance her ability to identify the robbers who broke into her home and murdered her husband. The hypnosis occurred before the robbers were known or identified, but after the witness had described one of the suspects.

The hypnosis was conducted to clear up confusion in K.H.'s mind as to certain embarrassing details and not as an aid to identification. Further, K.H., unlike the witness in *State v. Laureano, supra,* testified that her identification was based on her prehypnotic memory. The court in *Laureano* found that a witness' posthypnotic identification of a suspect is permissible as long as the identification is based on prehypnotic memory and procedural safeguards are satisfied. The trial court here meticulously applied the proper procedural safeguards. Thus, the court properly admitted K.H.'s posthypnotic identification.

The three main variances in K.H.'s testimony after being hypnotized concern the rape in the truck, the point of abduction, and K.H.'s being forced to commit fellatio. The one area in which the trial court felt there was not sufficient corroboration of prehypnotic memory regarded the rape in the truck. The court, resolving the uncertainty in favor of the opponent, prohibited the State from introducing this evidence.

The remaining procedural safeguards were satisfied when Mr. Yapp was given the opportunity to show the possible effects of hypnosis on the witness' testimony and the manner in which the hypnosis was conducted. In addition, a

special hypnosis instruction was given. The problems with hypnotic memory enhancement or hypnotic suggestion that concerned the court in *Martin, Coe* and *Laureano* are completely absent here.

Mr. Yapp's second issue is whether the trial court erred by excluding K.H.'s unstipulated polygraph results. Evidence derived from a scientific theory or principle is admissible only if that theory or principle has achieved general acceptance in the relevant scientific community. *Frye v. United States,* 293 F. 1013, 1014 (D.C. Cir. 1923). Pursuant to the *Frye* standard, Washington has adopted the general rule that results of polygraph examinations are inadmissible at trial absent stipulation by both parties. *State v. Renfro,* 96 Wn.2d 902, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982); *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974); *State v. Fondren,* 41 Wn. App. 17, 701 P.2d 810 (1985). Here, there is no stipulation; hence, there is no basis for invoking the exception to the general rule.

Mr. Yapp's contention that he was denied his right to effective cross examination because K.H.'s polygraph results were not admissible for impeachment is unpersuasive. In *State v. Ellison,* 36 Wn. App. 564, 571, 676 P.2d 531, *review denied,* 101 Wn.2d 1010 (1984), the court summarily dismissed this argument stating: "It would be anomalous to conclude that the admission of such evidence for impeachment purposes is required by the confrontation clause, and we decline to so hold". *Ellison,* at 571. In addition, Mr. Yapp was given ample opportunity to cross–examine K.H. as to any inconsistent statements made to police and to the polygraph operator while prohibiting the introduction of the actual polygraph. Thus, the court properly excluded the polygraph results.

Affirmed.

GREEN, C.J., and McINTURFF, J., concur.